UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | INDICTMENT NO.: 1:17-cr-00055 |
| | ) | |
| DWAYNE OSWALD FULTON, | ) | |
| | ) | |
| Defendant. | ) | |

## PLEA AGREEMENT

Defendant Dwayne Oswald Fulton, represented by his counsel John B. Long,
and the United States of America, represented by Assistant United States Attorney
C. Troy Clark, have reached a plea agreement in this case. The terms and conditions
of that agreement are as follows.

1.  <u>Guilty Plea</u>

Defendant agrees to enter a plea of guilty to Count One of the Indictment,
which charges a Conspiracy, in violation of 18 U.S.C. § 371.

2.  <u>Elements and Factual Basis</u>

The elements necessary to prove the offense charged in Count One are: (1) that
two or more persons in some way agreed to try to accomplish a shared and unlawful
plan; (2) the Defendant knew the unlawful purpose of the plan and willfully joined in
it; (3) during the conspiracy, one of the conspirators knowingly engaged in at least
one overt act as described in the indictment or information; and (4) the overt act was
committed at or about the time alleged and with the purpose of carrying out or
accomplishing some object of the conspiracy.



RECEIVED

2017 OCT 18 AM 10: 08

U.S. ATTORNEY
S DISTRICT OF GEORGIA
AUGUSTA

Defendant agrees that he is, in fact, guilty of this offense. He agrees to the accuracy of the following facts; all of which satisfies each of the offense's required elements:

The United States Department of the Army ("U.S. Army") was a branch of the United States Department of Defense, which was part of the executive branch of the United States Government. In part, the U.S. Army consisted of over one million soldiers and personnel stationed at numerous installations throughout the United States and across the world, including the U.S. Army Garrison Fort Gordon in Augusta, Richmond County, Georgia. Fort Gordon was home to various training and operational components of the U.S. Army, including components related to how the U.S. Army communicates on the battlefield.

At times, the U.S. Army contracted with private companies to provide certain services, including services related to the U.S. Army's information and communication networks.

**Anthony Tyrone Roper** was an active duty Colonel in the U.S. Army. In that position, **Anthony Tyrone Roper**'s official duties and responsibilities included, among many others, the oversight of the U.S. Army's efforts to build and modernize its information and communication networks. **Anthony Tyrone Roper**, aided and abetted by others, sought and received bribe payments in return for steering and awarding U.S. Army and private company contracts.

An individual whose initials are CDL served for over twenty years in the U.S. Army, retiring on February 1, 2008, at the rank of Colonel. Even before his

2

retirement, CDL established Communications, Research, Engineering, and Consultants Group, LLC ("CREC Group") with the plan to obtain U.S. Army contracts after his departure. CDL, aided and abetted by the Defendants and others, provided false and fictitious information and paid bribes to public officials, including to **Anthony Tyrone Roper**, all in an effort to obtain over $20 million in U.S. Army and private company contracts.

**Audra Roper**, the wife of **Anthony Tyrone Roper**, was the purported owner and operator of Quadar Group, a shell company used to funnel bribe payments to **Anthony Tyrone Roper**.

**Dwayne Oswald Fulton** was an officer of a large defense contracting company. Defendant **Fulton**, together with CDL, provided false and fraudulent information to the U.S. Army, other government agencies, and private companies, all in an effort to fraudulently obtain over $20 million worth of contracts and work for CDL, CREC Group, **Fulton**'s own employer and others.

OzTEK Research, LLC was a shell company purportedly owned and operated by Defendant **Dwayne Oswald Fulton**. Aided and abetted by CDL and **Anthony and Audra Roper**, Defendant **Dwayne Oswald Fulton** generated false and fraudulent invoices from OzTEK in an effort to obstruct an investigation into bribery payments made to **Anthony Tyrone Roper**.

Beginning at least as early as 2008, the exact date being unknown to the Grand Jury, and continuing through the return of this Indictment, in Richmond County, within the Southern District of Georgia, and elsewhere, the Defendant, **DWAYNE**

**OSWALD FULTON**, did knowingly and willfully combine, conspire, confederate and agree with **ANTHONY TYRONE ROPER** and **AUDRA ROPER**, with **CDL**, and with others both known and unknown to the Grand Jury, to commit one or more of the following offenses against the United States:

A. to knowingly devise and intend to devise a scheme and artifice: to defraud the U.S. Army and U.S. Army contractors; to obtain money from the U.S. Army and U.S. Army contractors by means of materially false and fraudulent pretenses, representations and promises; and to defraud and deprive the U.S. Army of its right to honest and faithful services, through bribery; and in furtherance thereof to transmit and cause to be transmitted in interstate commerce by means of wire communication, certain writings, signs, signals, and sounds for the purpose of executing such scheme and artifice, in violation of Title 18, United States Code, Section 1343 (Wire Fraud);

B. to, directly and indirectly, corruptly demand, seek, receive, accept, and agree to receive and accept things of value, personally and for other persons, as a public official, in return for being influenced in the performance of official acts and in return for being induced to do and to omit to do acts in violation of official duties; all in violation of Title 18, United States Code, Section 201(b)(2) (Bribery);

C. to, directly and indirectly, corruptly give, offer or promise anything of value to a public official, and offer and promise a public official anything of value to any other person or entity, with the intent to influence an

official act and to induce such public official to do and omit to do acts in violation of official duties; all done in violation of Title 18, United States Code, Section 201(b)(1) (Bribery);

D. to knowingly and willfully make materially false, fraudulent, and fictitious statements and representations in a matter within the jurisdiction of an agency of the executive branch of the United States Government, in violation of Title 18, United States Code, Section 1001 (False Statements); and,

E. to knowingly alter, destroy, mutilate, conceal, cover up, falsify, and make a false entry in a record, document, or tangible object with the intent to impede, obstruct, and influence the investigation and proper administration of justice in a matter within the jurisdiction of a department and agency of the United States, in violation of Title 18, United States Code, Section 1519 (Obstruction of Justice).

<u>Manner and Means of the Conspiracy</u>

It was part of the conspiracy that **Anthony Tyrone Roper**, aided and abetted by his coconspirators, would commit official acts and would do and omit to do acts in violation of his official duties, to include the selecting of U.S. Army contractors and the providing of internal, confidential, and proprietary information, all in an effort to steer and award millions in U.S. Army contracts to CDL, CREC Group and others in return for the payment of bribes;

In was further part of the conspiracy that CDL and other coconspirators, aided and abetted by each other, would offer, promise, and give bribes to **Anthony Tyrone**

5

Roper and other public officials, including cash and no-show jobs, in exchange for official acts, including the award of U.S. Army contracts;

It was further part of the conspiracy that CDL, Defendant **Dwayne Oswald Fulton** and other coconspirators, aided and abetted by each other, would provide false and fraudulent documents and information to the U.S. Army, the United States Small Business Administration ("SBA"), government contractors and others for the purpose of fraudulently obtaining and maintaining millions of dollars in U.S. Army and private company contracts;

It was further part of the conspiracy that CDL, Defendant **Dwayne Oswald Fulton** and other coconspirators, aided and abetted by each other, would fraudulently arrange for and use employees of other government contracting companies to perform the work awarded to CREC Group;

It was further part of the conspiracy that CDL, Defendant **Dwayne Oswald Fulton**, **Anthony Tyrone Roper** and other coconspirators, aided and abetted by each other, would send and cause to be sent by interstate wires, false information and money, for the purpose of facilitating their bribery and fraud schemes;

It was further part of the conspiracy that some of the coconspirators, aided and abetted by each other, would prepare and provide false and fictitious documents in an effort to conceal and hide their bribery and fraud schemes, and to obstruct an investigation into their unlawful activities;

It was further part of the conspiracy that some of the coconspirators, aided and abetted by each other, would make false, fraudulent, and fictitious statements and

representations to Special Agents with the U.S. Army Criminal Investigations Division and the U.S. Department of Defense, Criminal Investigative Service.

Overt Acts in Furtherance of the Conspiracy

In furtherance of the conspiracy and to effect its illegal objects, Defendant Dwayne Oswald Fulton, aided and abetted by **ANTHONY TYRONE ROPER, AUDRA ROPER**, and CDL and by others, committed one or more overt acts within the Southern District of Georgia and elsewhere, including, among others, the following:

A.    From in or about December 2008 through in or about December 2015, **Anthony Tyrone Roper** sought and received bribe payments, and deposited bribe payments into his personal bank accounts;

B.    From at least November 2007 through December 2015, **Anthony Tyrone Roper** provided CDL and Defendant **Dwayne Oswald Fulton** with internal, confidential, and proprietary information of the U.S. Army and other government contracting companies;

C.    From in or around September 2012 through 2015, **Anthony Tyrone Roper** signed a sole-source justification and provided all requisite approvals and justifications to ensure CREC Group was awarded and remained the prime contractor on certain U.S. Army contracts;

D.    From in or about February 2008 through at least 2016, CDL, aided and abetted by Defendant **Dwayne Oswald Fulton**, falsely represented to the U.S.

7

Army and to others that CREC Group employees were performing and had performed work under certain U.S. Army contracts;

     E.    From in or about April 2009 through 2016, CDL and Defendant **Dwayne Oswald Fulton**, aided and abetted by others, prepared false and fraudulent CREC Group applications and documents that were submitted to the U.S. Army, the SBA and others;

     F.    From in or around September 2009 through in or around December 2015, **Anthony Tyrone Roper**, aided and abetted by **Audra Roper**, generated and provided false and fraudulent invoices in the name of Quadar Group and another shell company, falsely claiming work that was never done;

     G.    From in or about 2008 through 2015, **Anthony Tyrone Roper** falsified Office of Government Ethics Form 450s relating to the receipt of additional income, salary, fees, commissions and gifts.

     H.    From in or about December 2015 through at least 2016, **Defendant Dwayne Oswald Fulton, Anthony Tyrone Roper, Audra Roper**, and CDL met and discussed the false and fraudulent information and documents that would be provided to government agents;

     I.    On or about December 15, 2015, **Anthony Tyrone Roper** knowingly provided government agents with false information and statements.

     J.    On or about December 15, 2015, **Audra Roper** knowingly provided government agents with false information and statements.

*D.F.*

K.   On or about May 24, 2016, **Audra Roper** knowingly provided government agents with false information and statements.

L.   All of the acts identified in Counts One through Nine of the Indictment filed in the above-numbered case.   All done in violation of Title 18, United States Code, Sections 371.

3.   <u>Possible Sentence</u>

Defendant's guilty plea will subject him to the following maximum possible sentence: five (5) years' imprisonment, three (3) years' supervised release, a $250,000 fine, such restitution as may be ordered by the Court, and forfeiture of all forfeitable assets. The Court additionally is obliged to impose a $100 special assessment.

4.   <u>No Promised Sentence</u>

No one has promised Defendant that the Court will impose any particular sentence or a sentence within any particular range.   The Court is not bound by any estimate of sentence given or recommendations made by Defendant's counsel, the government, the U.S. Probation Office, or anyone else.   The Court may impose a sentence up to the statutory maximum. Defendant will not be allowed to withdraw his plea of guilty if he receives a more severe sentence than he expects.

5.   <u>Court's Use of Sentencing Guidelines</u>

The Court is obligated to use the United States Sentencing Guidelines to calculate the applicable guideline range for Defendant's offense.   The Sentencing Guidelines are advisory; the Court is not required to impose a sentence within the range those Guidelines suggest.   The Court will consider that range, possible

departures under the Sentencing Guidelines, and other sentencing factors under 18 U.S.C. § 3553(a), in determining the Defendant's sentence. The Sentencing Guidelines are based on <u>all</u> of Defendant's relevant conduct, pursuant to U.S.S.G. § 1B1.3, not just the conduct underlying the particular Count or Counts to which Defendant is pleading guilty.

6.     <u>Agreements Regarding Sentencing Guidelines</u>

    a.     <u>Use of Information</u>

Nothing in this agreement precludes the government from providing full and accurate information to the Court and U.S. Probation Office for use in calculating the applicable Sentencing Guidelines range. Any incriminating information provided by the defendant during his cooperation will not be used in determining the applicable Guidelines range, pursuant to Section 1B1.8 of the Sentencing Guidelines.

    b.     <u>Acceptance of Responsibility</u>

The government will not object to a recommendation by the U.S. Probation Office that Defendant receive a two-level reduction in offense level for acceptance of responsibility pursuant to Section 3E1.1(a) of the Sentencing Guidelines. If the U.S. Probation Office makes that recommendation, and Defendant's offense level is 16 or greater prior to any reduction for acceptance of responsibility, the government will move for an additional one-level reduction in offense level pursuant to Section 3E1.1(b) of the Sentencing Guidelines based on Defendant's timely notification of his intention to enter a guilty plea.

7. <u>Dismissal of Other Counts</u>

At sentencing, the government will move to dismiss any other Counts of the Indictment that remain pending against Defendant.

8. <u>Cooperation</u>

    a.     <u>Complete and Truthful Cooperation Required</u>

Defendant must provide full, complete, candid, and truthful cooperation in the investigation and prosecution of the offenses charged in his Indictment and any related offenses. Defendant shall fully and truthfully disclose his knowledge of those offenses and shall fully and truthfully answer any question put to him by law enforcement officers about those offenses.

This agreement does not require Defendant to "make a case" against any particular person. His benefits under this agreement are conditioned only on his cooperation and truthfulness, not on the outcome of any trial, grand jury, or other proceeding.

    b.     <u>Motion for Reduction in Sentence Based on Cooperation</u>

The government, in its **sole discretion**, will decide whether Defendant's cooperation qualifies as "substantial assistance" pursuant to U.S.S.G. § 5K1.1 or Fed. R. Crim. P. 35 and thereby warrants the filing of a motion for downward departure or reduction in Defendant's sentence. If such a motion is filed, the Court, in its sole discretion, will decide whether, and to what extent, Defendant's sentence should be reduced. The Court is not required to accept any recommendation by the government that the Defendant's sentence be reduced.

11



9.  <u>Forfeiture</u>

    a.  Defendant agrees to forfeit his interest in any property constituting, or derived from, any proceeds obtained, directly or indirectly, as a result of the Title 18 offense to which he has agreed to plead guilty, to specifically include an amount up to any wages, salary, or other compensation Defendant received from his employer Kratos Defense & Security Solutions, Inc. for the tax years of 2009, 2010, 2011, 2012, 2013, 2014, and 2015, all of which is collectively, the "Subject Property."

    b.  By this agreement, the Defendant agrees to forfeit all interests in the property described above and to take whatever steps are necessary to pass clear title to the United States. These steps include but are not limited to the signing of a consent order or decree, a stipulation of facts regarding the transfer and basis for the forfeiture, and any other documents necessary to effectuate such transfer. Defendant acknowledges that the government may move at any time, pursuant to Fed. R. Crim. P. 32.2(e) to forfeit as substitute assets specific property of Defendant having a value up to the amount of the money judgment entered by the Court. In the event the government exercises its right to forfeit substitute assets, the Defendant agrees to take all steps requested by the government to pass clear title to the substitute property to the government.

    c.  Defendant agrees to hold the government and its agents and employees harmless from any claims made in connection with the seizure, forfeiture, or disposal of property connected to this case. Defendant further agrees to waive the requirements of the Federal Rules of Criminal Procedure 32.2 and 43(a) regarding

12



notice of the forfeiture in the charging instrument, announcement of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment.

d.      Defendant waives and abandons his interest in any other property that may have been seized in connection with this case. Additionally, Defendant waives any and all challenges on any grounds to the seizure, forfeiture, and disposal of any property seized in connection with this case. Defendant specifically agrees to waive any challenges arising under the Double Jeopardy Clause of the Fifth Amendment and the Excessive Fines Clause of the Eighth Amendment.

10.   Financial Obligations and Agreements

a.      Restitution

The amount of restitution ordered by the Court shall include restitution for the full loss caused by Defendant's total criminal conduct. Restitution is not limited to the specific counts to which Defendant is pleading guilty. Any restitution judgment is intended to and will survive Defendant, notwithstanding the abatement of any underlying criminal conviction.

b.      Special Assessment

Defendant agrees to pay a special assessment in the amount of $100.00, payable to the Clerk of the United States District Court, which shall be due immediately at the time of sentencing.

c.      Release of Appearance Bond

Defendant authorizes the Clerk of the United States District Court to release the funds posted as security for an appearance bond in this case, in the amount of

$5,000.00, to be applied to satisfy any of the financial obligations, including forfeiture, imposed by judgment of the Court in this case.

    d.    <u>Required Financial Disclosures</u>

By the date that Defendant enters a guilty plea, Defendant shall complete a financial disclosure form listing all his assets and financial interests, whether held directly or indirectly, solely or jointly, in his name or in the name of another. Defendant shall sign the financial disclosure form under penalty of perjury and provide that form to the Financial Litigation Unit of the United States Attorney's Office and to the United States Probation Office. Defendant authorizes the United States to obtain credit reports on Defendant and to share the contents of those reports with the Court and the United States Probation Office. Defendant also authorizes the United States Attorney's Office to inspect and copy all financial documents and information held by the United States Probation Office.

    e.    <u>Financial Examination</u>

Defendant will submit to an examination under oath on the issue of his financial disclosures and assets  if deemed necessary by the United States. Such examination will occur not later than 30 days after the entry of Defendant's guilty plea.

    f.    <u>No Transfer of Assets</u>

Defendant certifies that he has made no transfer of assets in contemplations of this prosecution for the purpose of evading or defeating financial obligations or

forfeiture created by this Agreement or that may be imposed upon him by the Court at sentencing. Defendant promises that he will make no such transfers in the future.

g.     <u>Material Change in Circumstances</u>

Defendant agrees to notify the United States of any material change in circumstances, as described in 18 U.S.C. § 3664(k), that occurs prior to sentencing in this case. Such notification will be made within seven days of the event giving rise to the changed circumstances, and in no event later than the date of sentencing.

h.     <u>Enforcement</u>

Any payment schedule imposed by the Court is without prejudice to the United States to take all actions and remedies available to it to collect the full amount of the financial obligations imposed by the judgment of the Court in this case. Defendant understands and agrees that the financial obligations and forfeiture imposed by the judgment of the Court in this case will be placed on the Treasury Offset Program so that any federal payment that Defendant receives may be offset and applied to the judgment debt without regard to or affecting any payment schedule imposed by the Court.

11.   <u>Waivers</u>

a.     <u>Waiver of Appeal</u>

Defendant entirely waives his right to a direct appeal of his conviction and sentence on any ground. The only exceptions are that the Defendant may file a direct appeal of his sentence if (1) the court enters a sentence above the statutory maximum, (2) the court enters a sentence above the advisory Sentencing Guidelines range found

to apply by the court at sentencing; or (3) the Government appeals the sentence. Absent those exceptions, Defendant explicitly and irrevocably instructs his attorney not to file an appeal.

b.      Waiver of Collateral Attack

Defendant entirely waives his right to collaterally attack his conviction and sentence on any ground and by any method, including but not limited to a 28 U.S.C. § 2255 motion. The only exception is that Defendant may collaterally attack his conviction and sentence based on a claim of ineffective assistance of counsel.

c.      FOIA and Privacy Act Waiver

Defendant waives all rights, whether asserted directly or through a representative, to request or receive from any department or agency of the United States any record pertaining to the investigation or prosecution of this case under the authority of the Freedom of Information Act, 5 U.S.C. § 552, or the Privacy Act of 1974, 5 U.S.C. § 552a, and all subsequent amendments thereto.

d.      Fed. R. Crim. P. 11(f) and Fed. R. Evid. 410 Waiver

Rule 11(f) of the Federal Rules of Criminal Procedure and Rule 410 of the Federal Rules of Evidence ordinarily limit the admissibility of statements made by a defendant during the course of plea discussions or plea proceedings. Defendant knowingly and voluntarily waives the protections of these rules. If Defendant fails to plead guilty, or his plea of guilty is later withdrawn, all of Defendant's statements in connection with this plea, and any leads derived therefrom, shall be admissible for any and all purposes.

12. <u>Defendant's Rights</u>

Defendant has the right to be represented by counsel, and if necessary have the court appoint counsel, at trial and at every other critical stage of the proceeding. Defendant possesses a number of rights which he will waive by pleading guilty, including: the right to plead not guilty, or having already so pleaded, to persist in that plea; the right to a jury trial; and the right at trial to confront and cross-examine adverse witnesses, to be protected from compelled self-incrimination, to testify and present evidence, and to compel the attendance of witnesses.

13. <u>Satisfaction with Counsel</u>

Defendant has had the benefit of legal counsel in negotiating this agreement. Defendant believes that his attorney has represented him faithfully, skillfully, and diligently, and he is completely satisfied with the legal advice given and the work performed by his attorney.

14. <u>Breach of Plea Agreement</u>

If Defendant fails to plead guilty, withdraws or attempts to withdraw his guilty plea, commits any new criminal conduct following the execution of this agreement, or otherwise breaches this agreement, the government is released from all of its agreements regarding Defendant's sentence, including any agreements regarding the calculation of Defendant's advisory Sentencing Guidelines. In addition, the government may declare the plea agreement null and void, reinstate any counts that may have been dismissed pursuant to the plea agreement, and/or file new charges against Defendant that might otherwise be barred by this plea agreement. Defendant

waives any statute-of-limitations or speedy trial defense to prosecutions reinstated or commenced under this paragraph.

15.   Entire Agreement

This agreement contains the entire agreement between the government and Defendant.

10/24/2017
Date

R. Brian Tanner
Georgia Bar No. 697615
United States Attorney

10/24/2017
Date

C. Troy Clark
Georgia Bar No. 811674
Assistant United States Attorney

I have read and carefully reviewed this agreement with my attorney. I understand each provision of this agreement, and I voluntarily agree to it. I hereby stipulate that the factual basis set out therein is true and accurate in every respect.

17 October 2017
Date

Dwayne Oswald Fulton
Defendant

I have fully explained to Defendant all of his rights, and I have carefully reviewed each and every part of this agreement with him. I believe that he fully and completely understands it, and that his decision to enter into this agreement is an informed, intelligent, and voluntary one.

_____
Date

John B. Long
Defendant's Attorney

19

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | INDICTMENT NO.: 1:17-cr-00035 |
| | ) | |
| DWAYNE OSWALD FULTON, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

The aforesaid Plea Agreement, having been considered by the Court in conjunction with the interrogation by the Court of the defendant and the defendant's attorney at a hearing on the defendant's motion to change his plea and the Court finding that the plea of guilty is made freely, voluntarily and knowingly, it is thereupon,

ORDERED that the plea of guilty by defendant be, and it is, hereby accepted and the foregoing Plea Agreement be, and it is, hereby ratified and confirmed.

This _9th_ day of _November_ 2017.

_____
JUDGE, UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA